STATE OF NORTH CAROLINA v. TONY RAY HYATT, DEFENDANT

No. COA98-577

(Filed 6 April 1999)

## 1. Criminal Law— pro se defendant—waiver of counsel not withdrawn—no inquiry necessary

The trial court did not err in a prosecution for possession of a firearm by a felon and other charges by not inquiring into whether a pro se defendant wanted or needed counsel or by failing to grant him a continuance to obtain counsel after the court had allowed defendant to sign a waiver, discharged the public defender, and continued the case twice, each time with a warning that there would be no more continuances. A criminal defendant must move the court to withdraw his prior waiver of counsel and statements by this defendant demonstrating his lack of legal skills do not equate to a motion or request to withdraw the previous waiver.

## 2. Constitutional Law— right to counsel—pro se representation—inadequate inquiry

The trial court erred by allowing a criminal defendant to proceed pro se without insuring that all constitutional standards were met where the written waiver signed by defendant asserted that he was informed of the charges against him, the nature of the statutory punishment, and the nature of the proceedings against him, but the record discloses that the trial court failed to inform defendant of any of those things. The record discloses only that the court met its mandate of informing defendant that he had the right to appointed counsel; this falls well short of the requirements of N.C.G.S. § 15A-1242.

STATE v. HYATT

[132 N.C. App. 697 (1999)]

Appeal by defendant from judgments entered 10 October 1996 by Winner, J., in Superior Court, Buncombe County. Heard in the Court of Appeals 28 January 1999.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Charlesena Elliot Walker, for defendant-appellant.*

WYNN, Judge.

On 10 January 1996, defendant Tony Ray Hyatt ("Hyatt") was indicted for possession of a firearm by a felon, driving with a revoked license, felonious driving while impaired, four counts of assault with a deadly weapon upon a government official, and six counts of being a habitual felon. Approximately five months thereafter, a public defender was appointed to represent Hyatt in Superior Court.

On 5 August 1996, Hyatt's case was called for trial. At that time, Hyatt expressed dissatisfaction with his assigned counsel and moved to continue the trial so that his mother could obtain private counsel for him. Upon hearing Hyatt's motion, the trial court engaged in the following colloquy with Hyatt:

Q: Alright, Mr. Hyatt, let me ask you something. In your motion here you've asked for a continuance. Are you relying on your mother to hire this lawyer, because if you're telling me you want to waive your right to a Court Appointed lawyer, that's fine, but I don't want to let [the Court Appointed lawyer] out of the lawsuit, and then if your mother suddenly hasn't gotten her money from Social Security, or for whatever reason she decides she's not going to hire that lawyer or any other lawyer, for that matter, then we'll be up here again. Now, when is your mother supposed to have her situation where she can employ this lawyer for you?

A: She has called down to Alabama where the checks and stuff come from, and they told her that within three to four weeks it would be there.

Q: Well, now, we're not going to continue it for more than a month. Are you going to be prepared to proceed and go forward at that time?

A: Yes, sir.

**STATE v. HYATT**

[132 N.C. App. 697 (1999)]

Q: Even if you haven't hired a lawyer?

A: I'm going to have one, Your Honor.

Q: So you're willing—What I'm asking you is, you've got a right to have a Court Appointed lawyer.

A: Right.

Q: Now, what I'm saying is, I won't let [the Court Appointed lawyer] out if you don't want to proceed without a Court Appointed lawyer.

A: No, I'd just rather—If I ain't got one at that time if I get it continued, we'll go with it by myself then.

Q: Alright, if you'll sign a Waiver, I'll let you out of the lawsuit, the case, Ms. Burner [the Court Appointed lawyer]. I will continue it, but I will put in there that it's not to be continued again. Do you understand what I'm saying?

A: Yes, sir.

Following this inquiry, Hyatt signed the Waiver of Counsel form indicating, *inter alia*, that he had been fully informed of the charges against him, the nature of and the statutory punishment for each such charge and his right to assigned counsel. Thereafter, the trial court granted Hyatt's motion to withdraw counsel and continued the case until 9 September 1996.

However on that date, Hyatt again appeared in court without counsel and asked for another continuance. At that session, Hyatt's mother informed the trial court that she still awaited her Social Security payments which she intended on using to obtain private counsel. The trial court granted Hyatt a continuance until 7 October 1996 after explicitly warning Hyatt and his mother that "this is the last time we're going to continue this, so you have to understand that, okay?"

When Hyatt's case came to trial on 7 October 1996, Hyatt once again appeared without counsel. At that time, the following exchange occurred:

COURT: Mr. Hyatt, do you have a lawyer?

HYATT: No, sir.

. . . .

COURT: My understanding is that the last time that this came on for trial, that you told Judge Payne you were going to hire your own lawyer, and he continued it for that purpose?

HYATT: Yes, sir.

COURT: And said it wasn't going to be continued again for that purpose.

Thereafter, the trial court, without further inquiry, brought Hyatt's case to trial. Indeed, the court never asked Hyatt whether he wanted to withdraw his previous waiver of assigned counsel or wanted the assistance of standby counsel.

During the trial, Hyatt stated on numerous occasions that he didn't have a lawyer and didn't know how to proceed. For example, when asked whether he was going to provide evidence on his previously-filed motion to change venue, Hyatt responded, "I ain't got no lawyer, so I don't know how to go into that." Similarly, when Hyatt was asked whether he wanted to make an opening statement he stated, "I don't have an attorney, and I don't know what to say or how to go about it." Ultimately, Hyatt was convicted on all counts.

On appeal, Hyatt contends that the trial court committed plain error by allowing him to proceed *pro se*. Specifically, Hyatt's appeal contains two distinct issues: (I) Whether the trial court erred by failing to inquire into whether he needed or wanted counsel or by failing to grant him a continuance to obtain counsel, and, (II) Whether the trial court erred by allowing Hyatt to proceed *pro se* without ensuring that all constitutional and statutory standards were satisfied.

I.

[1] It is well-settled that a criminal defendant can waive his right to be represented by counsel so long as he voluntarily and understandingly does so. *See State v. Clark*, 33 N.C. App. 628, 629, 235 S.E.2d 884, 886 (1977). Once given, a waiver of counsel is good and sufficient until the proceedings are terminated or until the defendant makes known to the court that he desires to withdraw the waiver and have counsel assigned to him. *State v. Watson*, 21 N.C. App. 374, 379, 204 S.E.2d 537, 540-41, *cert. denied*, 285 N.C. 595, 206 S.E.2d 866 (1974). Indeed, "[t]he burden of showing the change in the desire of the defendant for counsel rests upon the defendant." *Id.*

In the case *sub judice*, we are presented with the question of what actions a defendant must take to meet the aforementioned bur-

den. We find it unnecessary to articulate any particular standard in this case because Hyatt failed to meet the threshold requirement of moving the trial court to withdraw his waiver. Admittedly, this threshold requirement has never explicitly been articulated by this Court or our Supreme Court. Nonetheless, a close reading of our prior cases demonstrates that our holding today—that a criminal defendant must move the court to withdraw his prior waiver of counsel—has been an implicit part of our jurisprudence.

For example, in the factually similar case of *State v. Smith*, 27 N.C. App. 379, 381, 219 S.E. 277, 279 (1975), we stated that "the burden is on the defendant not only to *move* for withdrawal of the waiver, but also to show good cause for the delay." (Emphasis added.) Similarly, in *State v. Wilburn*, 57 N.C. App. 40, 44, 290 S.E.2d 782, 784 (1982), we noted that there was "no evidence that defendant ever *moved* to withdraw his waiver of assigned counsel." (Emphasis added.) Lastly, in *State v. Graham*, 76 N.C. App. 470, 474, 333 S.E.2d 547, 549 (1985), we granted the defendant who had previously waived counsel a new trial because the trial court failed to appoint counsel after he subsequently "*requested* that the court 'get someone to assist me in [my] case.'" (Emphasis added.) Thus, these and other cases implicitly hold that a criminal defendant must move or request the trial court to withdraw a previous waiver of counsel. *See also State v. Love*, 131 N.C. App. 350, 355, 507 S.E.2d 577, 581 (1998); *State v. Elliot*, 49 N.C. App. 141, 144, 270 S.E.2d 550, 551 (1980); *Clark*, 38 N.C. App. at 630, 235 S.E.2d at 886; *State v. Watts*, 32 N.C. App. 753, 755, 233 S.E.2d 669, 670, *disc. review denied*, 292 N.C. 734, 235 S.E.2d 788 (1977).

In the case *sub judice*, it is undisputed that Hyatt voluntarily signed a Waiver of Counsel form. Moreover, during Hyatt's 7 October 1996 trial, Hyatt neither moved nor requested the trial court to withdraw his prior waiver. Rather, Hyatt simply stated that because he didn't have an attorney, he did not know how to question jurors or prepare an opening statement. These statements, though demonstrating Hyatt's lack of legal skills, do not equate to a motion or request to withdraw his previous waiver. Therefore, the trial court was not required to inquire into whether Hyatt wanted or needed counsel.

We note that the case *sub judice* is distinguishable from *State v. Graham*, 76 N.C. App. 470, 333 S.E.2d 547 and *State v. McCrowre*, 312 N.C. 478, 322 S.E.2d 775. In those cases, it was determined that the

defendant was entitled to a new trial because the record showed that the defendant waived his right to appointed counsel, not to his right to all counsel. Specifically, in both cases "there is no evidence that defendant ever intended to proceed to trial without the assistance of some counsel." *McCrowre*, 312 N.C. at 480, 322 S.E.2d at 776-77; *Graham*, 76 N.C. App. at 475, 333 S.E.2d at 549. In this case, however, Hyatt explicitly informed the court that if he could not obtain private counsel he would "go with it by myself then." Thus, unlike the defendants in *McCrowre* and *Graham* who informed the trial court that they desired counsel, Hyatt led the trial court to believe that he was willing to undertake this case by himself.

In sum, we hold that to obtain relief from a waiver of his right to counsel, a criminal defendant must move the court for withdrawal of the waiver. *See Smith*, 27 N.C. App. at 381, 219 S.E.2d at 279. In the case *sub judice*, Hyatt never moved the court to withdraw his waiver. Therefore, no further inquiry was required.

II.

**[2]** We next address whether the trial court properly allowed Hyatt to proceed *pro se*. A criminal defendant's right to representation by counsel in serious criminal matters is guaranteed by the Sixth Amendment to the United States Constitution and Article I, §§ 19, 23 of the North Carolina Constitution. *See Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799 (1963). A criminal defendant, on the other hand, also "has a right to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes." *State v. Mems*, 281 N.C. 658, 670-71, 190 S.E.2d 164, 172 (1972). The trial court, however, must insure that constitutional and statutory standards are satisfied before allowing a criminal defendant to waive in-court representation. *See State v. Thomas*, 331 N.C. 671, 673, 417 S.E.2d 473, 475 (1992).

First, a criminal defendant's election to proceed *pro se* must be "clearly and unequivocally" expressed. *See State v. Carter*, 338 N.C. 569, 581, 451 S.E.2d 157, 163 (1994), *cert. denied*, 515 U.S. 1107, 132 L. Ed. 2d 263 (1995). Second, the trial court must make a thorough inquiry into whether the defendant's waiver was knowingly, intelligently and voluntarily made. *Id.*

Our Supreme Court has stated that the inquiry mandated by N.C. Gen. Stat. § 15A-1242 satisfies these requirements. *Id.* Section 15-1242 provides that:

**STATE v. HYATT**

[132 N.C. App. 697 (1999)]

A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes a thorough inquiry and is satisfied that the defendant:

(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

(2) Understands and appreciates the consequences of his decision; and

(3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

The provisions of this statute are mandatory and failure to conduct this inquiry constitutes prejudicial error. *See State v. Godwin*, 95 N.C. App. 565, 572, 383 S.E.2d 234, 238 (1989).

In the instant case, Hyatt initially signed a Waiver of Counsel form which stated, *inter alia*, that he was informed of the charges against him, the nature and statutory punishment for each charge, and his right to appointed counsel. Moreover, the form stated that he understood and appreciated the consequences of his decision to waive his right to counsel.

This Court has previously stated that "[w]hen a defendant executes a written waiver which is in turn certified by the trial court, the waiver of counsel will be presumed to have been knowing, intelligent and voluntary." *State v. Warren*, 82 N.C. App. 84, 89, 345 S.E.2d 437, 441 (1986). However, we have also stated that "a written waiver of counsel is no substitute for actual compliance by the trial court with G.S. 15A-1242." *State v. Wells*, 78 N.C. App. 769, 773, 338 S.E.2d 573, 575 (1986). Moreover, we have held that although a written waiver sets forth a presumption of a knowing, intelligent and voluntary waiver, that presumption can be overcome if the record demonstrates otherwise. *See Love*, 131 N.C. App. at 355, 507 S.E.2d at 581. Indeed, our Supreme Court has considered a written waiver as something in addition to the requirements of N.C. Gen. Stat. § 15A-1242, not as an alternative to it. *See State v. Thomas*, 331 N.C. 671, 675, 417 S.E.2d 473, 476 (1992).

In this case, while the written waiver asserts that Hyatt was informed (1) of the charges against him, (2) the nature of the statutory punishment for each charge, and (3) the nature of the proceed-

ings against him, the record discloses that the trial court failed to inform Hyatt of any of these things. Indeed, we have failed to discover any statements by the trial court which demonstrate that the defendant was informed of any of the above. Rather, the record discloses only that the trial court met its mandate of informing Hyatt that he had the right to appointed counsel. This falls well short of the requirements of N.C. Gen. Stat. § 15A-1242. Accordingly, because it is prejudicial error to allow a criminal defendant to proceed *pro se* without making the inquiry required by N.C. Gen. Stat. § 15A-1242, we must grant this defendant a new trial.

New trial.

Judges HORTON and EDMUNDS concur.